**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FREDRICK HERMAN FISHER,

                Petitioner,             Case No. 04-CV-71011

v.

DOUG VASBINDER,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITIONER'S
PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the court is Petitioner Fredrick Herman Fisher's *pro se* petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. For the following reason, the court will deny the petition.

**I. BACKGROUND**

Petitioner is currently incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan, pursuant to convictions for assault with a dangerous weapon, felon in possession of a firearm, felony firearm, obstructing and resisting a peace officer, hunting without a license, operating a motor vehicle on a suspended license, and illegally operating an off-road vehicle (ORV). The Michigan Court of Appeals set forth the relevant facts leading to Petitioner's conviction as follows:

> Michael Feagan, a conservation officer at the Department of Natural Resources (DNR), was driving through state land near Stoney Creek

Road in Cheboygan County when he noticed a set of ORV tracks heading into the woods. The tracks did not follow a trail, indicating that the ORV driver was in violation of DNR rules. Feagan parked his vehicle on the road and followed the tracks on foot until he discovered an unoccupied hunting blind that was constructed illegally from live pine bows instead of dead material from the ground of the woods. Feagan returned to the area the next morning and found the blind occupied. Feagan announced to the person inside the blind that he was a conservation officer.

Feagan testified that defendant told him that he was unaware that he illegally drove the ORV into the woods or that he illegally constructed the blind. The sticker on the ORV had also expired. Defendant failed to produce a hunting license for inspection. Feagan asked defendant to point the rifle away from Feagan's direction and unload it. However, defendant pointed the rifle at Feagan and said, "[n]o, I don't think I can do that." Feagan was shocked. He put his hands up and tried to distance himself from defendant. Feagan repeatedly told defendant that "[t]his isn't worth it." Feagan testified that defendant said that he did not want to shoot Feagan but that he had no choice because he could not allow Feagan to do what he was "going to do that day." Feagan told defendant that the violations were not serious but similar to that of a parking ticket. He asked defendant to allow him to leave and he promised not to pursue defendant. Finally, he told defendant that he did not want to die but wanted to go home to his family. Defendant responded that he also would like to go home to his family and he told Feagan to put his hands down and leave. Feagan returned to his vehicle, drove away and radioed the DNR dispatch with a description of defendant. A number of leads pointed the DNR and the police to defendant as the perpetrator. Feagan positively identified defendant several days later, after defendant turned himself into the authorities.

*Fisher*, slip op. at 1-2.

## II. PROCEDURAL HISTORY

Following a jury trial in Cheboygan County Circuit Court, Petitioner was convicted of assault with a dangerous weapon, felon in possession of a firearm,

2

felony firearm, obstructing and resisting a peace officer, hunting without a license, operating a motor vehicle on a suspended license, and operating an off-road vehicle in violation of Mich. Comp. Laws § 324.8113(r).  He was sentenced as a habitual offender to thirty to sixty months imprisonment for the assault conviction, and twenty-four to ninety months imprisonment for the felon in possession of a firearm conviction, to be served concurrently with one another, and consecutively to twenty-four months imprisonment for the felony-firearm conviction.  Petitioner was also sentenced to forty-two days imprisonment for the following convictions: hunting without a license, driving with a suspended license, and illegally operating an ORV.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims through counsel:

I.     As a result of the failure of the trial court to have the defendant present during the questioning of the jury, the guilty verdicts must be set aside.

II.    As a result of the jury's familiarity with the newspaper accounts, and the jury's exposure to suspicion that the defendant may have been involved in tampering, the judge abused his discretion in denying the motion for a mistrial.

III.   As a result of the trial court's failure to rule on the defendant's motion to suppress the article of clothing, and the admission of that clothing into evidence, the defendant was denied a fair trial and due process of law.

IV.   As a result of the court's failure to rule on the defendant's motion for dismissal of judge, the defendant was denied a fair trial and due process of law.

V.      As a result of the trial judge allowing the firearm to be viewed
        by the jury, even though it was not the firearm allegedly used
        by the defendant, and was not admitted as evidence, the
        defendant was denied due process of law.

Petitioner filed a pro per supplemental brief, presenting the following

additional claims:

I.      As a result of the trial court's *ex parte* communication with a juror,
        defendant was denied his right to a fair trial and due process of law
        therefore his conviction must be reversed.

II.     The trial court abused its discretion by improperly permitting the
        prosecutor to introduce evidence that defendant had a previous
        conviction thereby denying defendant due process in violation of
        U.S. Const. Amend V, XIV, Mich. Const. Art. 1, Sec. 17.

III.    Defendant was denied effective assistance of counsel and due
        process when counsel failed to object to the introduction of a
        previous conviction, and failed to require of the court to complete the
        suppression hearing prior to trial.

IV.     The cumulative effect of the numerous trial errors denied defendant
        a fair trial and due process of law.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v.*

*Fisher*, No. 237819 (Mich. Ct. App. Sept. 9, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme

Court, presenting the same claims presented to the Michigan Court of Appeals,

and the following additional claim:

Sentencing guideline's manual page 30.  OV 19.  Threat to the
security of a penal institution or court or interference with the
administration of justice: Defendant-appellant contends that this law
applies to the administration of justice, and not the official capacity of

4

a law enforcement officer.  The enhancement of sentence was illegal.  The court was misled.

The Michigan Supreme Court denied leave to appeal.  *People v. Fisher*, No. 124679 (Mich. Oct. 31, 2003).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

I.      The state trial judge/court failed to have defendant present during questioning of the jurors and defendant has a fundamental constitutional right to be present, but he was denied that right under confrontation clause to confront and the guilty verdict here must be set aside and vacated.

II.     Jurors familiarity of newspaper accounts and exposure to suspicion that defendant may have been involved in jury tampering.  The trial judge abused his discretion in denying the motion for a mistrial.

III.    The state trial judge (Scott Pavich) failed to rule on defendant's motion to suppress article of clothing, and by admitting it into evidence without a final resolution, did deprive defendant of a fair and impartial trial by jury.

IV.     The state trial judge abused the process in his judicial proceeding, by failing to recuse himself from presiding and by not granting defendant's motion to disqualify himself, deprived defendant of a fair and impartial trial by jury.

V.      The state trial judge abused his discretion by allowing the prosecution and court to have demonstrated a weapon to the jurors, that was not entered as an exhibit and by allowing the weapon, it so infected the jurors mind to have rendered an unfair verdict and fair trial by jury.

VI.     Defendant was denied his Sixth Amendment right to effective assistance of counsel and due process, when his counsel failed to object to the introduction of a previous conviction and failed to require the court to complete the suppression hearing prior to trial,

and failed to get a ruling on pretrial motion to dismiss the judge Scott Pavich for prejudice, bias.

VII.    The trial court abused its discretion by improperly permitting the prosecutor to introduce evidence that defendant had a (25 year old) previous conviction, thereby denying defendant due process in violation of U.S. Const Amend. V, XIV; Mich. Const. Art. 1, Section 17.

VIII.    The state trial court's ex parte communication with a juror deprived defendant of a fair trial by jury and due process, therefore his conviction must be reversed.

IX.    Defendant was deprived of his Sixth Amendment right to effective assistance, when both trial counsel and appellate counsel's performance fell below objective standards of [reasonableness] and professional norms.

X.    The cumulative effect of numerous pretrial and trial errors denied Petitioner a fair trial and due process of law.

## III.  STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA") applies to all habeas petitions filed after the effective date of the act, April 24, 1996.  Because Petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

6

(1)     resulted in a decision that was contrary to, or involved
        an unreasonable application of, clearly established
        Federal law, as determined by the Supreme Court of the
        United States; or

(2)     resulted in a decision that was based on an
        unreasonable determination of the facts in light of the
        evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's

adjudication of a petitioner's claims unless the state court's decision was contrary

to or involved an unreasonable application of clearly established federal law.

*Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998).  Additionally, this court must

presume the correctness of state court factual determinations.  28 U.S.C. §

2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995)

("We give complete deference to state court findings unless they are clearly

erroneous.").

        The United States Supreme Court has explained the proper application of

the "contrary to" clause as follows:

        A state-court decision will certainly be contrary to [the Supreme
        Court's] clearly established precedent if the state court applies a rule
        that contradicts the governing law set forth in our cases. . . .

_____

[1]        28 U.S.C. § 2254(e)(1) provides, in pertinent part:

        In a proceeding instituted by an application for a writ of
        habeas corpus by a person in custody pursuant to the
        judgment of a State court, a determination of a factual issue
        made by a State court shall be presumed to be correct.

7

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 410-11.

With this standard in mind, the court proceeds to the merits of the petition for a writ of habeas corpus.

## IV.  DISCUSSION

### A.  Exhaustion of State Court Remedies

Respondent argues that the petition should be dismissed because Petitioner failed to exhaust his state court remedies with respect to three of his claims for habeas corpus relief.

A prisoner challenging his confinement by way of a habeas corpus petition must exhaust his state court remedies prior to seeking federal habeas corpus relief by fairly presenting the substance of each federal constitutional claim in state court.  28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief.  *See Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).   "Ordinarily, the state courts must have had the opportunity to pass on defendant's claims of constitutional violations."  *Prather v. Rees*, 822 F.2d 1418 (6th Cir. 1987). However, a federal court may deny a habeas petition on the merits despite a petitioner's failure to exhaust state remedies for all his claims.  28 U.S.C. § 2254(b)(2); *see also Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991), *cert. denied*, 503 U.S. 922 (1992) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the power of the court).

9

Respondent argues that Petitioner's fifth and seventh claims for habeas corpus relief, that the trial court improperly allowed a weapon to be used as a demonstrative exhibit and improperly admitted evidence of Petitioner's prior felony conviction, are unexhausted because they were not fairly presented as federal constitutional claims in state court. A prisoner fairly presents his claim to the state courts by:

> (1) reliance upon federal cases employing constitutional analysis;
>
> (2) reliance upon state cases employing federal constitutional analysis;
>
> (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or
>
> (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681.

"General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *Id.*

This court holds that Petitioner fairly presented his evidentiary claims. While Respondent is correct that Petitioner framed these claims primarily as state law issues in his submissions to the Michigan Court of Appeals and Michigan Supreme Court, the Court also recognizes that "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the

10

defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370

(6th Cir. 1994).  In his state court briefs, Petitioner argued that he was deprived of

a fundamentally fair trial as a result of the evidentiary errors.  In light of the limited

constitutional issues presented by a state court's decision to admit evidence, the

Court concludes that Petitioner's arguments to the state courts in support of his

evidentiary claims were sufficient to exhaust the constitutional claim presented in

his habeas corpus petition.

Respondent also argues that Petitioner's ineffective assistance of appellate

counsel claim is unexhausted.  Petitioner did not present that claim to the

Michigan Court of Appeals or Michigan Supreme Court.  Therefore, the claim is

unexhausted.  In addition, the Court finds that one of Petitioner's ineffective

assistance of trial counsel claims, that trial counsel was ineffective in failing to

require the trial court to rule upon his motion to disqualify trial court judge, is also

unexhausted.

For the reasons set forth below, the court has concluded that Petitioner's

ineffective assistance of appellate counsel claim and ineffective assistance of trial

counsel claim do not warrant habeas corpus relief.  Accordingly, in the interests

of efficiency and justice, the Court will address Petitioner's claim rather than

dismiss the petition on the ground of failure to exhaust.  *See* 28 U.S.C. §

2254(b)(2); *Cain,* 947 F.2d at 819.

11

## B.  Right to Be Present During Questioning of Juror

Petitioner argues that he is entitled to habeas corpus relief because he was

deprived of his right to be present when the trial court questioned jurors regarding

whether they had been improperly influenced by another juror's statements.  The

Michigan Court of Appeals described the incident giving rise to the inquiry as

follows:

> On the morning of the third day of the four-day trial, the trial court
> summoned counsel for both parties and informed them that juror
> David Charboneau had earlier "stuck his head in," presumably, the
> court's chambers and "said something unusual."  The record does
> not indicate if anything further was discussed between the Court and
> Charboneau.  The court summoned Charboneau for questioning in
> the presence of counsel.  Charboneau said that his car keys were
> removed from his vehicle the previous night.  He related that he told
> the jurors about the incident and asked them whether anything
> unusual had happened to them.  He said that he did not inform the
> jurors that his house had been frequently vandalized by his neighbor.
> He also said that he did not believe that the incident was related to
> the trial and he regretted that he had mentioned the incident to the
> jurors.
>
> After Charboneau was questioned by the trial court and counsel, he
> returned to the jury room with instructions not to discuss the matter
> with the jurors.  Defendant's counsel consulted with defendant and
> then moved for a mistrial on the ground that Charboneau's
> comments to the jury on the incident caused the jury to suspect that
> defendant was attempting to intimidate the jurors particularly when
> the jury was aware from the parties' stipulation at trial that defendant
> had a prior felony conviction and nine jurors on the panel had been
> exposed to pretrial media information with respect to inadmissible
> evidence pertaining to defendant's prior conviction.
>
> In response to defendant's motion for a mistrial, the trial court
> conducted an in-chambers inquiry to determine whether the jury was
> influenced by Charboneau's comments on the incident of the missing

keys.  The trial court again summoned Charboneau into chambers.
The court and counsel learned that, upon returning to the jury room,
Charboneau told the jurors that the court was concerned about the
influence his comments had on the jury and he informed the jurors
about the problems he had with his neighbor.  Each juror was
summoned to chambers individually and questioned by the court and
counsel.  At the conclusion of the inquiry, the court determined that
the jurors were not unduly influenced by the incident.  The court
offered to excuse Charboneau from serving as a juror upon
defendant's request.  After consulting with defendant, counsel
requested that Charboneau remain as a juror.

*Fisher*, slip op. at 2-3.

The Michigan Court of Appeals held that the claim was not preserved for

appellate review because neither he nor his attorney objected to Petitioner's

absence at the inquiry.  *Id.* at 3.  The state court, therefore, limited its review "to

plain error affecting a substantial right," *id.*, *citing People v. Carines*, 597 N.W.2d

130, 143 (Mich. 1999), and held that there was no such error:

A hearing on the issue of undue influence of a juror is a critical stage
of the trial at which a defendant has a right to be present.  *People v.
Hayes*, 126 Mich. App. 721, 730; 337 N.W.2d 905 (1983).  Because
it is possible that the defendant's absence made no difference in the
outcome of the proceeding, the standard by which to determine
whether error requiring reversal occurred is whether there is "any
reasonable possibility of prejudice."  *Hayes, supra* at 731, quoting
*People v. Morgan*, 400 Mich. 527, 536; 255 N.W.2d 603 (1977).

In support of his burden to establish the possibility of prejudice,
defendant . . . states that he could have offered some assistance to
his counsel to combat the suspicion on the part of the jury that he
may have been attempting to intimidate the jury.  This argument is
based wholly on speculation.  Defendant presents nothing to show

13

how he may have been of assistance to his counsel.  There is
nothing in this record to establish the possibility of any prejudice.

*Fisher*, slip op. at 4.

Respondent argues that this claim is procedurally defaulted because the

Michigan Court of Appeals held that the claim was not preserved for review

where neither Petitioner nor his counsel objected to Petitioner's absence at the

questioning of jurors.  The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims
in state court pursuant to an independent and adequate state
procedural rule, federal habeas review of the claims is barred unless
the prisoner can demonstrate cause for the default, and actual
prejudice as a result of the alleged violation of federal law, or
demonstrate that failure to consider the claims will result in a
fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Such a default may occur if

the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to

present an issue to a state appellate court at his only opportunity to do so, *Rust v.*

*Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state

procedural rule that required him to have done something at trial to preserve his

claimed error for appellate review, e.g., to make a contemporaneous objection, or

file a motion for a directed verdict.  *United States v. Frady*, 456 U.S. 152, 167-69

(1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).  Application of

the cause and prejudice test may be excused if a petitioner "presents an

extraordinary case whereby a constitutional violation resulted in the conviction of

14

one who is actually innocent." *Rust*, 17 F.3d at 162; *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

This court begins its analysis of whether Petitioner's claim is procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claim. *See Coleman*, 501 U.S. at 729-30. The last state court to

15

address this claim, the Michigan Court of Appeals, held that the issue was not preserved for appellate review because Petitioner's counsel failed to object to Petitioner's absence.  *Fisher*, slip op. at 3.  The state court's judgment clearly rested on a procedural bar and the doctrine of procedural default applies.

Petitioner fails to assert cause to excuse his procedural default.  This claim is therefore barred unless he can show that failure to consider it will result in a fundamental miscarriage of justice.  The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995).  Thus, Petitioner must assert a constitutional error along with a claim of innocence.  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Id.*

The Michigan Court of Appeals held that Petitioner's absence from the questioning of jurors was harmless error.  The Supreme Court has held that the violation of a defendant's right to personal presence at all critical stages of the trial is subject to harmless error analysis.  *See Rushen v. Spain*, 464 U.S. 114, 117 (1983).  Petitioner has not shown that the Michigan Court of Appeals' conclusion that he was not prejudiced by this error was erroneous, and he has not supported his allegations of constitutional error with new reliable evidence of

16

actual innocence that was not presented to the trial court.  Accordingly,

Petitioner's first habeas claim is procedurally barred.

## C.  Denial of Motion for Mistrial

After learning that Juror Charboneau had made an unusual comment to the

trial court judge, Petitioner's attorney moved for a mistrial.  As discussed above,

the trial court conducted an in-chambers inquiry to establish whether

Charboneau's conduct influenced any of the jurors.  Following the in-chambers

inquiry, the trial court denied the motion.  Petitioner claims that the trial court

erred in denying this motion.

The Michigan Court of Appeals held that the trial court's denial of the

motion for mistrial was proper, stating, in pertinent part:

> A defendant tried by jury has a right to a fair and impartial jury. . . .
> The guarantee of the right to a fair trial means that "one accused of a
> crime is entitled to have his guilt or innocence determined solely on
> the basis of the evidence introduced at trial, and not on the grounds
> of official suspicion . . . or other circumstances not adduced as proof
> at trial." *People v. Banks*, 249 Mich. App. 247, 256; 642 N.W.2d 351
> (2002), *quoting Taylor v. Kentucky*, 436 U.S. 478, 485; 98 S. Ct.
> 1930; 56 L. Ed. 2d 468 (1978).
>
> Here, the jurors were questioned individually.  The trial court
> explained the purpose of the inquiry, questioned each juror about
> Charboneau's incident and inquired into whether the incident
> affected them.  The prosecutor and defendants counsel were present
> and they were allowed to ask additional questions.  The court
> promptly addressed the concern of several jurors who had
> mistakenly believed that the parties had access to the jurors' home
> addresses from the jury-duty forms.  All except for one juror stated
> that Charboneau's incident with the missing keys was unrelated to
> the trial and that Charboneau must have merely misplaced his keys.

17

> The single juror who believed that the trial and Charboneau's
> incident were related immediately changed her mind when the court
> informed her that the parties did not have access to the jurors' home
> addresses.  All jurors stated that they could be fair and impartial.
> Following the inquiry and upon the prosecutor's request, the court
> informed the jury that the parties did not have access to the jurors'
> home addresses.  Accordingly, there is nothing to establish that
> Charboneau's incident affirmatively prejudiced defendant's right to a
> trial before a fair and impartial jury.  Thus, the trial court did not
> abuse its discretion in denying the motion for a mistrial.

*Fisher*, slip op. at 3.

Petitioner has failed to show that the Charboneau incident impacted the

impartiality of the jury.  Further, Petitioner has failed to establish that the Michigan

Court of Appeals' decision that the denial of a mistrial did not deprive him of a fair

and impartial trial was contrary to or an unreasonable application of Supreme

Court precedent.  Therefore, he is not entitled to habeas corpus relief.

### D.  Ex Parte Communication With Juror

Petitioner asserts yet another claim for habeas corpus relief related to the

Charboneau incident.  Petitioner claims that the trial court judge engaged in

improper ex parte contact with Charboneau when Charboneau "stuck his head" in

the judge's chambers and "said something unusual."  *Fisher*, slip op. at 13.

The trial court promptly advised the prosecutor and defense counsel about

Charboneau's comment and questioned Charboneau and each of the jurors to

determine whether Charboneau's comment compromised their impartiality.  The

Michigan Court of Appeals held that the limited ex parte communication was

18

harmless error because no prejudice resulted.  *Fisher*, slip op. at 5.  This court finds that the Michigan Court of Appeals holding was not contrary to or an unreasonable application of Supreme Court precedent.

### E.  Request for Change of Venue

Petitioner also claims that his right to an impartial jury was violated when the trial court denied his motion for a change of venue.  Although this claim was properly presented on direct review in state court, the Michigan Court of Appeals and Michigan Supreme Court failed to address it.  Where a claim is fairly presented in state court, but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision.  *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000).  This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented."  *Id.* at 943.  However, the independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA."  *Id.*

The United States Supreme Court has recognized two types of prejudice which require reversal for refusal to change venue –  presumed and actual prejudice.  Prejudice is presumed when adverse pretrial publicity is so pervasive

19

or the influence of the media creates such a "circus atmosphere" in the courtroom that "[t]he proceedings [are] entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob." *Murphy v. Florida*, 421 U.S. 794, 799 (1975). Courts presume prejudice in such cases because "adverse pretrial publicity can create such a presumption of prejudice in a community that jurors' claims that they can be impartial should not be believed." *Patton v. Yount*, 467 U.S. 1025, 1031 (1984). Where the circumstances surrounding a case were not so egregious as to invoke a presumption of prejudice, a petitioner can show that the trial court erred in denying a request for change of venue by demonstrating actual prejudice. *Murphy*, 421 U.S. at 800-01.

In support of his claim that the trial court erred in denying his motion for a change of venue, Petitioner cites four articles which appeared in a local newspaper and which cited his prior conviction for criminal sexual conduct. Petitioner provides no further argument in support of this claim. Thus, the court assumes that Petitioner intends to assert a claim of presumed prejudice.

Petitioner analogizes his case to *Rideau v. Louisiana*, 373 U.S. 723 (1963). In *Rideau*, the United States Supreme Court held that the petitioner was entitled to habeas corpus relief because the trial court erred in denying his request for a change of venue. The petitioner was charged with robbing a bank, kidnapping three bank employees and killing one of those employees. Shortly after he was

arrested, a videotape was made of an interview between the petitioner and the

Sheriff.  During the interrogation, the petitioner, surrounded by two state troopers

and the sheriff, admitted, in response to the sheriff's leading questions, to the

robbery, kidnapping and murder.  The interrogation was broadcast on television

three times over the next few days and seen by tens of thousands of people.  The

trial court denied the petitioner's motion for a change of venue.  The Supreme

Court determined that it need not examine the *voir dire* transcript in this case to

find that the trial court erred in denying the motion for a change of venue because

prejudice was presumed under such egregious circumstances.  *Id.* at 727.  The

Supreme Court held that the petitioner had a right to a jury drawn from a

community of people who had not seen his televised interrogation.  *Id.*

The petitioner in *Irvin v. Dowd*, 366 U.S. 717 (1961), was accused of

committing six murders over a four-month period.  The trial court denied

petitioner's request for a change of venue in the first trial, which involved charges

for only one of the murders.  The United States Supreme Court held that failure to

grant a change of venue deprived petitioner, who had been convicted of murder

and sentenced to death, his due process rights.  In *Irvin*, the Court summarized

the swell of community sentiment against the petitioner as follows:

> A reading of the 46 exhibits which petitioner attached to his motion
> indicates that a barrage of newspaper headlines, articles, cartoons
> and pictures was unleashed against him during the six or seven
> months preceding trial. . . . These stories revealed the details of his
> background, including a reference to crimes committed when a

21

juvenile, his convictions for arson almost 20 years previously, for burglary and by a court-martial on AWOL charges during the war. He was accused of being a parole violator.  The headlines announced his police line-up identification, that he faced a lie detector test, had been placed at the scene of the crime and that the six murders were solved but petitioner refused to confess.  Finally, they announced his confession to the six murders and the fact of his indictment for four of them in Indiana.  They reported petitioner's offer to plead guilty if promised a 99-year sentence, . . . In many of the stories petitioner was described as the 'confessed slayer of six,' a parole violator and a fraudulent-check artist. . . . On the day before the trial the newspapers carried the story that Irvin had orally admitted the murder of Kerr (the victim in this case) as well as the 'robbery-murder of Mrs. Mary Holland; the murder of Mrs. Wilhelmina Sailer . . ; and the slaughter of three members of the Duncan family. . . .

Finally, and with remarkable understatement, the headlines reported that 'impartial jurors are hard to find.'  The panel consisted of 430 persons.  The court itself excused 268 of those on challenges for cause as having fixed opinions as to the guilt of petitioner; . . . An examination of the 2,783-page voir dire record shows that 370 prospective jurors or almost 90% of those examined on the point . . . entertained some opinion as to guilt –  ranging in intensity from mere suspicion to absolute certainty.

*Id.* at 726-27.

The Court found that this "pattern of deep and bitter prejudice" deprived the petitioner of his right to a fair trial.  *Id.* at 728.

In contrast, in the pending case, Petitioner provides as support for his claim that a change of venue should have been granted, four newspaper articles. While two of the articles mentioned Petitioner's prior conviction for criminal sexual conduct, the articles were neither inflammatory nor prejudicial.  The articles did not "suggest[] a community with sentiment so poisoned against petitioner" as to

22

warrant a presumption that an impartial jury could not be seated.  *Murphy v. Florida*, 421 U.S. 794, 803 (1975); *see also DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998) ("[I]t is well-settled that pretrial publicity itself – even pervasive, adverse publicity – does not inevitably lead to an unfair trial.") (internal quotations omitted).

The court concludes that Petitioner failed to show a community-wide swell of animus toward him which would trigger a presumption that the setting of the trial was prejudicial.  The Court shall deny habeas relief on this claim.

## F.  Alleged Judicial Bias

In his fourth claim for habeas corpus relief, Petitioner argues that he was deprived of a fair trial because the trial court judge was biased and refused to recuse himself.  Further, he claims that the trial court judge failed to rule on his motion to disqualify.  The Michigan Court of Appeals denied this claim because Petitioner provided no reasons to substantiate his argument that the trial court judge should have recused himself.  *Fisher*, slip op. at 5.  Similarly, in his brief in support of his habeas corpus petition, Petitioner provides no argument in support of recusal.  Accordingly, habeas relief will not be granted on this claim.

## G.  Evidentiary Claims

Petitioner presents three claims that the trial court abused its discretion in three evidentiary rulings.  First, Petitioner argues that the trial court erred in allowing a rifle similar to that allegedly pointed by Petitioner at Feagan to be used

23

as a demonstrative exhibit.  Second, Petitioner further claims that the trial court erred in permitting evidence of his prior felony conviction.  Third, Petitioner claims that the trial court erred in failing to adjudicate his motion to suppress an article of clothing and photographs of the clothing and subsequently improperly admitted the clothing into evidence.

"'[F]ederal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), *quoting Louis v. Jeffers*, 497 U.S. 764, 780 (1990).  The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law."  *Long v. Smith*, 663 F.2d 22, 23 (6th Cir. 1981).  Further, "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994), *citing Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985), *cert. denied* 478 U.S. 1020 (1986).  *See also Estelle*, 502 U.S. at 72 (holding that a federal court may not grant habeas corpus relief simply on the basis that a trial court incorrectly interpreted state evidence rules to allow admission of prior bad acts evidence).

Under Michigan law, "demonstrative evidence is admissible if it bears a substantial similarity to an issue of fact involved in a trial."  *Fisher*, slip op. at 5 (internal quotation omitted).  Feagan testified that the firearm was similar to that used by Petitioner and Feagan used the firearm to demonstrate how Petitioner

24

pointed the rifle at him.  The Michigan Court of Appeals, therefore, held that the

use of the rifle as a demonstrative exhibit was proper under Michigan law.  *Id.*

The Michigan Court of Appeals also held that admission of the fact of

Petitioner's prior felony conviction was proper.  *Id.* at 5-6.  Petitioner was charged

with being a felon in possession of a firearm; proof of a prior conviction is an

element of that crime.  The jury was informed that the parties stipulated to the fact

of Petitioner's prior felony conviction.  Petitioner stipulated to the prior felony to

avoid exposing the jury to the nature of the conviction.  *Id.* at 6.

Finally, with respect to the Petitioner's claim regarding the admissibility of

clothing and photographs of the clothing, the Michigan Court of Appeals held, in

pertinent part:

> Defendant argues that he was denied a fair trial and due process of
> law when the trial court failed to rule on his motion in limine to
> exclude photographs of the clothes he was allegedly wearing at the
> time of his encounter with Feagan.[1]  The decision whether to admit
> evidence is within the trial court's discretion; this Court only reverses
> such decisions where there is an abuse of discretion.
>
> One week before the trial, defendant withdrew his motion in limine to
> exclude the photographs.  However, at a hearing on the other
> motions on the day before the trial, defendant revived the motion to
> exclude the photographs when he objected to the photographs as
> being highly prejudicial.  The trial court decided to defer its ruling
> until the photographs were offered into evidence at trial.  At trial,
> defendant's counsel questioned Feagan on one photograph and
> stated that he had no objection to the admission of the photographs
> into evidence.  Defendant and his counsel were aware that they
> could have objected but they chose not to object.  Defendant may
> not harbor error as an appellate parachute. . . .  Moreover, we
> conclude that the photographs were merely cumulative.  They were

introduced to prove that Feagan's initial description of defendant was accurate.  However, when defendant turned himself into the authorities, Feagan affirmatively identified him as the perpetrator. Defendant does not argue that Feagan's identification of him was suspect.

_____

[1]It cannot be discerned from defendant's brief on appeal whether he argues that the trial court failed to rule on his motion to suppress the clothes that he was allegedly wearing on the day he encountered Feagan or on his motion in limine to exclude photographs of the clothes. The court declined to rule on the motion to suppress the clothes because the prosecutor did not know whether the items would be offered into evidence.  Because the prosecutor offered into evidence the photographs and not the clothes, we address only the issue of the motion in limine to exclude the photographs.

*Fisher*, slip op. at 4-5.

Petitioner has failed to show that the rifle's use as a demonstrative exhibit, the admission of the fact of Petitioner's prior conviction, or the admission of the photographs resulted in a constitutional violation.  Thus, his third, fifth nor seventh claims may not form a basis for habeas corpus relief.

### H.  Alleged Ineffective Assistance of Trial Counsel

Petitioner claims that he is entitled to the issuance of a writ of habeas corpus because he received ineffective assistance of both trial and appellate counsel.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  *Strickland v.*

26

*Washington*, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" *Tinsley v. Million*, 399 F.3d 796, 802 (6th Cir. 2005), *quoting Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

In the context of an ineffective assistance of appellate counsel claim, the Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . .  Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.  Strategic and tactical choices regarding which issues to pursue on

appeal are "properly left to the sound professional judgment of counsel."  *United*

*States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

### 1.  Trial Counsel

Petitioner claims that his trial attorney was ineffective in: (i) failing to object

to the introduction of evidence of a previous conviction; (ii) failing to require the

court to complete the suppression hearing; and (iii) failing to require the court to

rule upon the motion to disqualify the trial court judge.

The Michigan Court of Appeals denied Petitioner's first two ineffective

assistance of counsel claims, stating, in pertinent part:

> Defendant next argues . . . that he was denied the effective
> assistance of counsel because his counsel stipulated to the fact that
> defendant had a prior conviction and because counsel failed to
> request the trial court to rule on the motion to suppress the
> photographs of the clothes that he was allegedly wearing at the time
> of his encounter with Feagan.
>
> Because defendant did not move below for a new trial or a *Ginther*[]
> hearing, this Court's review is limited to mistakes apparent on the
> record. . . . To establish ineffective assistance of counsel, defendant
> must prove: (1) that his counsel's performance was so deficient that
> he was denied his right to counsel and he must overcome the strong
> presumption that counsel's performance was not sound trial strategy;
> and (2) that his deficient performance prejudiced him to the extent
> that there is a reasonable probability that but for counsel's error, the
> result of the proceeding would have been different.  *People v.
> Carbin*, 463 Mich. 590, 599-600; 623 N.W.2d 884 (2001).
>
> As previously discussed, the prosecutor was required to prove the
> element of a prior conviction.  Defendant's counsel stipulated to this
> fact so that the jury would not be exposed to the nature of the prior

28

> conviction.  Defendant may not now claim error in the admission of
> the evidence. . . . Further, the photographs were cumulative
> evidence that did not affect the outcome of the case.  Thus,
> defendant was not deprived of effective assistance of counsel.

*Fisher*, slip op. at 6.

The court finds the Michigan Court of Appeals' decision was neither

contrary to nor or an unreasonable application of clearly established federal law.

The Court of Appeals cited case law which plainly incorporated the *Strickland*

standard, and explained and supported its conclusion that his attorney's

representation did not prejudice Petitioner.  Even assuming that Petitioner's

attorney erred as alleged by Petitioner, in light of the strength of the evidence

presented against him, the Court finds that the state court's conclusion that

Petitioner was not prejudiced by the error was neither contrary to nor an

unreasonable application of Supreme Court precedent.  Therefore, no relief will

be granted on these ineffective assistance of counsel claims.

As discussed above, Petitioner's third claim of ineffective assistance of trial

counsel is unexhausted.  Petitioner claims that his trial counsel was ineffective for

failing to require the court to rule upon his motion to disqualify the trial court

judge.  Petitioner provides no argument in support of his claim that the trial court

judge should have recused himself.  Therefore, he has failed to provide any claim

of bias and cannot show that he was prejudiced by his attorney's conduct in this

regard.

29

## 2.  Appellate Counsel

Petitioner claims that his appellate attorney was ineffective in failing to raise the following claims on direct appeal: (i) the trial court erred in allowing rebuttal witnesses who were not on the witness list; (ii) Petitioner's main witness was not permitted to testify in his defense; and (iii) Petitioner's sentence was improperly enhanced.

Other than a one-sentence statement of the claims that appellate counsel allegedly should have raised on direct appeal, Petitioner provides no argument regarding the merit or substance of these claims.  Therefore, he has not shown that he was prejudiced by his attorney's failure to present them, and habeas relief is denied.

## I.  Cumulative Effect of Alleged Errors

Finally, Petitioner claims that the cumulative effect of the errors alleged in his petition entitle him to habeas corpus relief.  This Court has determined that the state court's holding that the errors alleged by Petitioner were not errors or did not deprive him of his right to a fair trial was not contrary to or an unreasonable application of Supreme Court precedent.  Thus, Petitioner's claim that the cumulative effect of the errors alleged herein deprived him of a fair trial so as to entitle him to habeas corpus relief is meritless.

## V.  CONCLUSION

IT IS ORDERED that Petitioner's petition for a writ of habeas corpus [Dkt. #

4] is DENIED and the matter is DISMISSED WITH PREJUDICE.


 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  October 18, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of
record on this date, October 18, 2005, by electronic and/or ordinary mail.


 S/Lisa Wagner

Case Manager and Deputy Clerk
(313) 234-5522